UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STEPHEN S. KREIN,

        Plaintiff,

v.                                    Civil Action No. 2:11-cv-00962

WEST VIRGINIA STATE POLICE and
TROOPER L. W. PRICE, individually
and in his official capacity, and
TROOPER W. S. SNYDER, individually
and in his official capacity,

    Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

        Pending is defendants' motion to dismiss, filed

January 3, 2012.[1]


            I.    Background


        In this action, plaintiff Stephen S. Krein asserts

various constitutional and statutory claims against the West

Virginia State Police and two of its troopers arising out of a

_____

        [1] Also pending are defendants' motion to strike plaintiff's
response in opposition to defendants' motion to dismiss as
untimely, and plaintiff's motion for leave to file his response
in opposition out of time, both filed February 7, 2012.  For
reasons appearing to the court, it is ORDERED that defendants'
motion to strike be, and it hereby is, denied.  It is further
ORDERED that plaintiff's motion be, and it hereby is, granted.
Plaintiff is cautioned to adhere to the deadlines imposed by the
Local Rules.

confrontation that occurred on December 1, 2008.  Krein is a
resident of Kanawha County, West Virginia.  The West Virginia
State Police ("State Police") is an agency of the State of West
Virginia.  Defendant Troopers L.W. Price and W.S. Snyder are
employed by the State Police.  The following factual recitation
is taken from the complaint, as the court must at this stage of
the proceedings.

        In the early morning hours of December 1, 2008,
Troopers Price and Snyder (collectively, the "troopers") set out
to locate Krein for the purpose of effectuating a warrant for
his arrest on domestic violence charges.[2]  To that end, the
troopers set up a surveillance point overlooking Route 119 in
Roane County, West Virginia.  Around 9:30 a.m., the troopers
discovered Krein at Huffman's Country Store near the
intersection of Route 119 and Ambler Ridge Road, near Walton,
West Virginia.  (Compl. ¶¶ 4-6).

        Trooper Price immediately pulled into the parking lot
of Huffman's Country Store and positioned his cruiser at an
angle directly in front of plaintiff's white Chevrolet truck.
(Id. ¶ 7).  The cruiser's emergency lights and sirens were not

_____

        [2] According to plaintiff's complaint, Trooper Price was at
that time involved in a romantic relationship with plaintiff's
ex-wife.

activated.  (Id.).  Trooper Snyder then exited the cruiser.  As
Trooper Price also began exiting the cruiser, he observed that
plaintiff's vehicle began to move toward them.  Plaintiff drove
forward and struck the cruiser "with only enough force to close
the door of the cruiser which had been left open by defendant
Snyder."  (Id. at ¶ 10).  Krein then "reversed the vehicle and
began to turn the wheel of the vehicle."  (Id.).  Quoting from
Trooper Price's post-incident interview, the complaint states
that Price observed plaintiff "'cutting his wheel to come out in
between a small opening.  He was trying to get out.'"  (Id. at
¶ 11).

         At this moment, Trooper Price drew his service weapon
and positioned himself between the plaintiff's vehicle and the
cruiser and began issuing verbal commands to plaintiff.  (Id. at
¶ 13).  Observing the vehicle moving forward, Trooper Price
fired a round from his weapon in the general direction of
plaintiff's vehicle.  (Id. at ¶ 14).  At the same time, Krein
leaned his head down into the passenger seat area of his vehicle
to avoid being struck by the gunfire.  (Id. at ¶ 15).  Trooper
Price then moved to the passenger's side of plaintiff's rolling
vehicle and fired a second round into the passenger side window
of plaintiff's vehicle, striking plaintiff in the head.  (Id. at
¶ 16).

Krein's vehicle "then coasted between the cruiser and another vehicle without striking either vehicle" and came to rest on the roadway.  (<u>Id.</u> at 15).  The troopers removed plaintiff from his vehicle and awaited the arrival of an ambulance.  (<u>Id.</u> at 16).

Plaintiff filed his initial complaint in the Circuit Court of Kanawha County, West Virginia, on December 6, 2010.  On October 26, 2011, the circuit court granted leave to file an amended complaint, which was filed November 28, 2011.  Inasmuch as the amended complaint raised claims pursuant to the laws and Constitution of the United States, defendants removed the action to this court on December 2, 2011.

The amended complaint contains seven counts alleging causes of action; three arising under 42 U.S.C. § 1983, and four arising under West Virginia law.  Plaintiff's three federal law counts are labeled and numbered as such and allege: (I) excessive force in violation of the Fourth Amendment, (II) <u>Monell</u> and supervisory liability, and (III) arbitrary and unreasonable state conduct in violation of the Fourteenth Amendment.  The four state law counts are labeled and numbered as such and allege: (I) violation of West Virginia constitution, (II) vicarious liability for violations of West Virginia constitution, (III) negligent hiring, retention, and supervision

4

against the West Virginia State Police, and (V) intentional infliction of emotional distress. State Law Count IV is merely a request for punitive damages and does not amount to a stand-alone cause of action. Defendants filed a motion to dismiss the complaint on various grounds set forth below. The motion is now ripe for determination.

## II. Motion to Dismiss

### A. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009). But, as the Supreme Court recently explained, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011) (citing 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219, pp. 277-278 (3d ed. 2004 and Supp. 2010)).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint.'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e]

facts in the plaintiff's favor."   <u>Edwards v. City of Goldsboro</u>,
178 F.3d 231, 244 (4th Cir. 1999).

B.   Operative Complaint

As an initial matter, defendants contend that the
court should consider allegations made in the original complaint
rather than only those found in the amended complaint.   They
protest that the amended complaint "conveniently omits . . .
facts . . . in an obvious attempt to downplay both the
justification for the Troopers' safety concerns during their
search for (and attempted seizure of) Plaintiff and the
reasonableness of the Troopers' actions when Plaintiff was
shot."   (Def.'s Mem. at 2, n. 3).   Defendants argue that
"[t]hese facts in Plaintiffs Complaint formed the basis for
Defendants' original motion to dismiss.   This attempt to hide-
the-ball by omitting these facts, which were contained in the
Complaint, from the [amended complaint] is impermissible."
(<u>Id.</u>).

"As a general rule, an amended pleading ordinarily
supersedes the original and renders it of no legal effect."
<u>Young v. Cty. of Mt. Rainer</u>, 238 F.3d 567, 572 (4th Cir. 2001)
(citing <u>Kelley v. Crosfield Catalysts</u>, 135 F.3d 1202, 1204-05
(7th Cir. 1998)).   Beyond the mere assertion that in amending

7

his original complaint plaintiff abandoned certain unfavorable
allegations that should now be taken as true, defendants do not
persuasively explain why the court should disregard the general
rule and consider plaintiff's prior allegations.  Accordingly,
the amended complaint is the operative pleading for the purpose
of defendants' motion to dismiss.[3]

C.   Plaintiff's Federal Claims

Plaintiff's federal claims arise under 42 U.S.C.
§ 1983, which provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects,
> or causes to be subjected, any citizen of the United States
> . . . to the deprivation of any rights, privileges, or
> immunities secured by the Constitution . . . shall be
> liable to the party injured in an action at law.

42 U.S.C. § 1983.

Plaintiff's section 1983 claims take three forms: a
count against Troopers Price and Snyder in their individual
capacities for excessive force; a count against the West
Virginia State Police for "Monell and Supervisory Liability
Cognizable under 24 [sic] U.S.C. § 1983"; and a count against
Troopers Price and Snyder in their individual capacities for

---

[3] Development of those matters earlier alleged but not
considered herein may be of use to defendants on summary
judgment.

8

"Arbitrary and Unreasonable State Conduct Pursuant to the Fourteenth Amendment Cognizable under 42 U.S.C. § 1983."[4]

1.  Federal Law Count I: Excessive Force Under 42 U.S.C. § 1983 and Qualified Immunity

The court now turns to the heart of plaintiff's case: the alleged use of excessive force by Trooper Price.  Plaintiff maintains that this claim may be reduced to a simple set of facts:  "[Stephen Krein] was shot in the head through the passenger side window of his truck during a confrontation with the police."  (Pl.'s Memorandum at 1).  Defendants move for dismissal, ardently maintaining that the troopers' conduct was reasonable and did not violate plaintiff's constitutional rights.

Claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen are analyzed under the Fourth Amendment's reasonableness standard.  Graham v. Connor, 490 U.S. 386, 395 (1989).  Specifically, the Fourth Amendment protects

---

[4] To the extent that the allegations in Federal Law Counts I and III may be construed as against Troopers Price and Snyder in their official capacities as well, such claims are in effect claims against the State Police, the disposition of which is controlled by the same analysis found in part II.C.2.

"[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend IV. Objective reasonableness is the touchstone of a Fourth Amendment excessive force analysis, namely, whether an officer knew or should have known that a particular seizure qualified as excessive. See Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); Valladares v. Cordero, 552 F.3d 384, 388-89 (4th Cir. 2009); see also Graham v. Connor, 490 U.S. 386, 396 (1989). The test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Additionally, inasmuch as "'police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided." Waterman v. Batton, 393 F.3d 471, 476-77 (4th Cir. 2005) (quoting Graham, 490 U.S. at 397) (internal citation omitted); see Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) ("The court's focus should be on the circumstances at the moment force was used and

on the fact that officers on the beat are not often afforded the luxury of armchair reflection.").

Defendants assert Troopers Price and Snyder's actions were justified based on the following:

> The Troopers had a warrant for Plaintiff's arrest and demanded that he surrender.  Plaintiff, with Trooper Price standing directly between his cruiser and Plaintiff's truck, ignored the Troopers' commands and used his truck as a weapon in an attempt to escape. Faced with a non-compliant and dangerous suspect and rightfully fearful for his life, Trooper Price shot Plaintiff.

(Defs.' Mem. Mot. to Dismiss at 1).  However, according to Krein's factual allegations, which the court is obliged to credit in their entirety at this point in the case, the fact that Trooper Price discharged his service weapon through the passenger side window, striking plaintiff in the head, makes it evident that the trooper was no longer in the direct path of plaintiff's vehicle.  Instead, the complaint alleges that plaintiff was using his vehicle "to get out," and offers no indication that plaintiff posed a significant threat to either trooper or any other person.  Taking plaintiff's factual allegations as true, the court cannot say that Trooper Price's actions were objectively reasonable as a matter of law.

Apart from the objective reasonableness standard governing the viability of the Fourth Amendment claim, the

movants assert they are entitled to qualified immunity on the claim in any event.  Our court of appeals recently revisited the qualified immunity standard in Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc):

> Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.  Saucier v. Katz, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part, Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); see also Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011). "Following the Supreme Court's recent decision in Pearson [], we exercise our discretion to use the two-step procedure of Saucier [], that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010) (citations omitted).

Id. at 531.  A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202.

      The Supreme Court has clearly established that a law enforcement officer may not apply "deadly force to prevent the escape of an apparently unarmed suspected felon . . . unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Tennessee v. Garner, 471 U.S. 1, 3 (1985).  Accepting the facts

as pled, a reasonable officer should have known that the use of deadly force under the circumstances pled here was not appropriate.  Accordingly, while additional facts may come to light that would justify Trooper Price's actions, he may not, on the pleadings alone, avail himself of the protection of qualified immunity.

Thus, inasmuch as plaintiff has made out a plausible claim for excessive force, and Trooper Price is not at this juncture entitled to qualified immunity, defendants' motion to dismiss, with respect to this claim, must as to Trooper Price be denied.  As to Trooper Snyder, see <u>infra</u> part II.E.

2.  Federal Law Count II: <u>Monell</u> and Municipal Liability under 42 U.S.C. § 1983

Plaintiff also asserts a claim against the West Virginia State Police for violation of his constitutionally guaranteed rights

> caused by implementation of customs, policies or official acts of West Virginia State Police, to wit: the failure of said Defendants [sic, Defendant] to adequately hire, train, supervise, and discipline its police officers regarding the circumstances which constitute probable cause for a search and obtaining a search warrant.

(Compl. at ¶ 46).[5]  Defendants move to dismiss on the grounds
that plaintiff fails to make specific reference to any
particular practices, customs, or policies that could have
caused plaintiff's injuries.

        The court need not reach defendants' arguments,
however, because this claim fails on a more fundamental level.
Section 1983 authorizes claims for relief against a "person" who
acts under the color of state law.  In Monell v. Department of
Social Services, the Supreme Court held that municipalities and
municipal officials sued in an official capacity are suitable
"persons" for such purposes.  436 U.S. 658, 690 (1978).  The
Court later clarified that states, state agencies, or state
officials sued in their official capacities cannot be sued for
damages under section 1983.  Will v. Michigan Department of
State Police, 491 U.S. 58 (1989).  Inasmuch as the State Police
is neither a municipality nor a municipal agency, but a state
agency falling under the rule of Will, plaintiff's Monell claim
must be dismissed with prejudice.

_____

     [5] The court notes that plaintiff's claims involve an
allegedly unlawful seizure, and do not appear to have any
relationship to inadequate training "regarding the circumstances
which constitute probable cause for a search and obtaining a
search warrant."

3.    Federal Law Count III:  Arbitrary and Unreasonable
State Conduct (Fourteenth Amendment)


Plaintiff's final federal claim asserts that
"[d]efendants' actions in shooting the plaintiff were wholly
arbitrary, unreasonable and malicious thus constituting a
violation of the Plaintiff's clearly established substantive and
procedural due process rights protected by the Fourteenth
Amendement."  (Compl. at ¶ 34).

This claim also fails, inasmuch as the conduct it
addresses is subsumed by plaintiff's Fourth Amendment claim.  A
substantive due process claim challenging the use of force may
lie only if neither the Fourth nor the Eighth Amendment applies.
<u>Graham</u>, 490 U.S. at 395.  In other words, the textually specific
Fourth Amendment protection preempts the more generalized
substantive due process protection.  Accordingly, this count
must also be dismissed with prejudice.

D.  State Law Claims

In addition to his federal law claims, plaintiff
asserts four counts arising under West Virginia law: (I) a
"constitutional tort" Against Troopers Price and Snyder for
violations of plaintiff's rights under Article III, Sections 1,

15

6, and 10 of the West Virginia Constitution; (II) a vicarious liability claim against the State Police for the actions of Troopers Price and Snyder; (III) a negligent "hiring, retention, training and/or supervision" claim against the State Police; and (V) a claim against Troopers Price and Snyder for outrageous conduct and intentional infliction of emotional distress. Plaintiff stipulates that all counts against the State Police and the individual troopers in their official capacities seek damages only to the extent that they are covered by liability insurance.

### 1. State Law Count I- Excessive Force

In State Law Count I, plaintiff asserts "constitutional tort action[s]" against Troopers Price and Snyder. Although plaintiff makes reference to several provisions of the West Virginia Constitution, only Article III, Section 6 is relevant to plaintiff's underlying claim of excessive force.[6]  The Supreme Court of Appeals of West Virginia

---

[6] Plaintiff also invokes Article III, Sections 1 and 10 of the West Virginia Constitution.  As defendants point out, Section 1, entitled "Bill of Rights," is a statement of the "basic principle on which our entire democratic structure is founded," Allen v. State Human Rights Comm., 174 W. Va. 139, 324 S.E.2d 99, 109 (W. Va. 1984), and has not been applied in circumstances such as these.  Section 10 contains West Virginia's substantive and procedural due process clauses, analogous to the Fourteenth Amendment of the United States Constitution.  As explained in
(Cont.).

16

has "traditionally construed Article III, Section 6 in harmony with the Fourth Amendment." State v. Duvernoy, 156 W. Va. 578, 582 (W. Va. 1973). As a result, plaintiff's allegations of excessive force under the West Virginia Constitution are analyzed under the Fourth Amendment's "objective reasonableness" standard.

Defendants move to dismiss this count on the grounds that the actions of Troopers Price and Snyder were objectively reasonable as a matter of law. Having already resolved this question in the context of plaintiff's federal claims, there is nothing new for the court to address here. Accordingly, the court concludes that plaintiff has stated a claim for excessive force under the West Virginia Constitution.

### 2. State Law Count II- Vicarious Liability

In State Law Count II, plaintiff contends that the State Police is "vicariously liable for the acts of Defendants

---

relation to plaintiff's federal claims, supra part II.C.3, claims of excessive force are more appropriately analyzed under the more textually specific Fourth Amendment (and its state analog) than the more generalized due process clause.

Price and Snyder committed within the scope of their employment."[7]

Under West Virginia law, a plaintiff who alleges the use of excessive force by a trooper may also have a cause of action against the State Police for vicarious liability.  <u>Pruitt v. West Virginia Dep't of Public Safety</u>, 222 W. Va. 290, 298, 664 S.E.2d 175, 183 (W. Va. 2008).  In <u>Pruitt</u>, a trooper shot and killed an unarmed suspect in the living room of his own home.  The decedent's estate filed suit, alleging federal and state constitutional claims against the State Police,[8] the trooper, and other unnamed individuals.  Addressing the plaintiff's allegation that the State Police was vicariously liable for the trooper's conduct, the court relied on its established rule that when "'[a]n agent or employee . . . . is

_____

[7] State Law Count II also includes a <u>Monell</u>-type direct liability claim, i.e., a claim that the State Police directly violated plaintiff's constitutional rights through the formulation and implementation of its policies, customs, and practices.  (Compl. at ¶ 30).  Of course, the <u>Monell</u> rule is an application of federal law under section 1983, and applies only to municipal governments.  436 U.S. 658, 690 (1978).  Plaintiff is unable to supply, and the court is unable to identify, any West Virginia case recognizing such a cause of action under state law.  Accordingly, to the extent that State Law Count II asserts such a claim, it is dismissed.

[8] Prior to 2006, the agency now known as the West Virginia State Police was known as the West Virginia Department of Public Safety.

18

acting within the scope of his employment, then his principal or employer may also be held liable." Id. Under this rule, the court concluded, "the [State Police] may be liable for any wrongful acts found to be committed by [the] Trooper." Id.

Defendants' sole argument with respect to this claim is that it "lack[s] the requisite underlying constitutional violation." (Def.'s Mem. at 12). That is to say, defendants argue that there is simply nothing for the State Police to be vicariously liable for. In light of the court's analysis of plaintiff's federal and state excessive force claims, this defense fails. Accordingly, defendants have presented no grounds for dismissal of plaintiff's state claims for vicarious liability on the part of the State Police.

3.  State Law Count III:  Negligent Hiring, Training, and/or Supervision

In this count, plaintiff alleges that "Defendant West Virginia State Police failed to exercise reasonable care in the hiring, retention, training, and/or supervision of its employees, Defendants Price and Snyder." (Compl. at ¶ 34). Defendants contend that this claim is deficiently pled and that regardless, the State Police is immune to any negligence claim.

19

West Virginia has recognized a cause of action based upon negligent hiring and retention.  See State ex rel. West Virginia State Police v. Taylor, 201 W. Va. 554, 499 S.E.2d 283, 289 n. 7 (W. Va. 1997); McCormick v. W. Va. Dep't of Public Safety, 202 W. Va. 189, 503 S.E.2d 502, 506-07 (W. Va. 1998). The test for determining whether an employer has negligently hired and retained an employee is as follows:

> When the employee was hired or retained, did the
> employer conduct a reasonable investigation into the
> employee's background vis a vis the job for which the
> employee was hired and the possible risk of harm or
> injury to co-workers or third parties that could
> result from the conduct of an unfit employee? Should
> the employer have reasonably foreseen the risk caused
> by hiring or retaining an unfit person?

McCormick, 503, S.E.2d at 506.  Claims of negligent supervision and training have been treated like other claims based in tort. See Taylor v. Cabell Huntington Hosp., Inc., 208 W. Va. 128, 538 S.E.2d 719, 725 (W. Va. 2000).

Defendants assert that plaintiff's "conclusory allegations" lack the minimal factual basis necessary to support such a claim.  However, taking the facts in the light most favorable to the plaintiff, Trooper Price may be viewed as having used excessive force of a particularly egregious and possibly malicious nature.  Plaintiff may thus be entitled to the inference that a reasonable investigation into Trooper Price's background may have revealed the possible risk of harm

20

or injury to a person such as plaintiff.  Accordingly,
plaintiff's negligence claim is not deficiently pled.

        Having so concluded, the court turns to defendants'
claim that the State Police is entitled to sovereign or
qualified immunity from plaintiff's negligence claim.  The State
of West Virginia and its agencies enjoy sovereign immunity, as
expressed in Section 35, Article VI of the West Virginia
Constitution, as follows:  "The State of West Virginia shall
never be made a defendant in any court of law or equity . . . ."
See Hesse v. State Soil Conservation Committee, 153 W. Va. 111,
168 S.E.2d 293 (W. Va. 1969) (recognizing extension of sovereign
immunity to state agencies).  However, the Supreme Court of
Appeals has held that where a state agency, pursuant to
legislative authorization, has purchased liability insurance,
individuals injured by the action of the agency may sue the
agency, notwithstanding Section 35, if they seek recovery from,
and to the extent of, the insurance coverage.  Pittsburgh
Elevator Co. v. West Virginia Bd. of Regents, 172 W. Va. 743,
310 S.E.2d 675, 688-89 (W. Va. 1983).  In this case, plaintiff's
complaint makes clear that "all causes of action complained of
herein against the [State Police] . . . seek only to recover to
the extent they are covered by liability insurance and do not
seek to recover taxpayer payments."  (Compl. at ¶ 41).  As a

21

result, sovereign immunity is no impediment to plaintiff's claim.

Thus, the court must consider whether West Virginia's qualified immunity doctrine bars plaintiff's negligent hiring claim.  Under West Virginia law, a state agency sued under a theory of vicarious liability may be entitled to qualified immunity for the negligent acts of an officer of that department acting within the scope of his employment, unless the officer's actions violate a "right clearly established by statute or constitutional requirements."  Clark v. Dunn, 195 W. Va. 272, 465 S.E.2d 374, 380 (W. Va. 1995); see also Jarvis v. West Virginia State Police, 227 W. Va. 472, 711 S.E.2d 542 (2010) (applying Clark's holding).  The agency's immunity will not always be coterminous with that of the officer, but instead "the existence of the State's immunity of the State [sic] must be determined on a case-by-case basis."  Parkulo v. West Virginia Bd. of Probation and Parole, 199 W. Va. 161, 483 S.E.2d 507, 523-24 (W. Va. 1996).

The West Virginia Supreme Court of Appeals has not prescribed the type of "case by case" qualified immunity analysis that governs when an agency is sued on a derivative basis.  See id. at 524 (reserving the full development of the "case-by-case" approach "to another day").  It has likewise not

spoken on whether an agency may avail itself of qualified
immunity when it is sued directly, as is the case here.  In
light of the uncertainty on both points, and inasmuch as the
agency will remain in this action through discovery based upon
the disposition of the other claims herein, the better course is
to defer consideration of the defense pending development of the
evidentiary record.  Accordingly, the court does not dismiss
this claim.

### 4.  State Law Count V:  Emotional Distress

State Law Count V asserts a claim against Troopers
Price and Snyder for "Outrageous Conduct/Intentional
Infliction."  (Compl. at ¶ 38-40).  Specifically, plaintiff
alleges that "the actions of the individual defendants as
aforesaid were outrageous, constitute the intentional infliction
of mental, physical and emotional distress, were reprehensible,
fraudulent, wilful and wanton, mailicious, and in blatant and
intentional disregard of Plaintiff's rights."  (Id. at ¶ 39).
The West Virginia Supreme Court of Appeals has explained that

> "[i]n order for a plaintiff to prevail on a claim for
> intentional or reckless infliction of emotional
> distress, four elements must be established. It must
> be shown: (1) that the defendant's conduct was
> atrocious, intolerable, and so extreme and outrageous
> as to exceed the bounds of decency; (2) that the
> defendant acted with the intent to inflict emotional
> distress, or acted recklessly when it was certain or
> substantially certain emotional distress would result

23

> from his conduct; (3) that the actions of the
> defendant caused the plaintiff to suffer emotional
> distress; and (4) that the emotional distress suffered
> by the plaintiff was so severe that no reasonable
> person could be expected to endure it."

Syl. pt. 2, <u>Philyaw v. E. Associated Coal Corp.</u>, 633 S.E.2d 8, 9

(W. Va. 2006) (quoting Syl. pt. 3, <u>Travis v. Alcon Labs.</u>, 504

S.E.2d 419, 421 (W. Va.1998)).


      Defendants' first argument with respect to this claim

is that the tort of outrage is incompatible with the conclusion

that Trooper Price acted reasonably.  However, as discussed

above, the court cannot, at this stage, so conclude.  Defendants

further contend that the amended complaint lacks any factual

allegations supporting the inference that Trooper Price acted

with the intent to inflict emotional distress upon plaintiff.

But the facts do indicate that Trooper Price shot plaintiff in

the head and, short of intending to cause plaintiff's death, in

doing so could have intended no other consequence than to

inflict severe pain and suffering.  Thus, the court concludes

that plaintiff has sufficiently alleged each element of a claim

for intentional infliction of emotional distress and,

accordingly, defendants' motion to dismiss this count must as to

Trooper Price be denied.

24

E.  Claims Against Trooper Snyder

As seen above, plaintiff's allegations revolve primarily around the actions of Trooper Price.  Despite the allegation that "Defendants Price and Snyder's actions were in concert with one another," the complaint otherwise limits Trooper Snyder's role to that of bystander, rather than wrongdoer.  The first paragraphs of the complaint establish that Troopers Price and Snyder engaged in a search for plaintiff, established a "surveillance point," and eventually did locate plaintiff at Huffman's Country Store.  (Compl. at ¶¶ 4-7).  Trooper Snyder then exited his cruiser and, presumably, witnessed the events that followed.  (Id. at ¶ 8).  There is no allegation that Snyder threatened, touched, or even interacted with plaintiff until the time that Snyder helped to remove plaintiff from his vehicle to await the arrival of an ambulance.  (Id. at ¶ 16).

The mere fact that Trooper Snyder did not pull the trigger does not excuse him from liability.  However, Plaintiff pleads no facts to support the bare allegation that Troopers Snyder and Price acted in concert with respect to the imposition of excessive force upon plaintiff.  Further, there is no allegation that Trooper Snyder had any opportunity to intervene to halt Trooper Price's actions, or that he played any role in

Trooper Price's training or supervision.  As a result, the complaint contains insufficient factual matter to sustain any of the claims pled as to Trooper Snyder.  Accordingly, any and all claims against him must be dismissed, but without prejudice to the amendment, for good cause shown, of the amended complaint to rejoin Trooper Snyder in this action.

### III.  Conclusion

Pursuant to the foregoing analysis, the court ORDERS as follows:

1. That plaintiff's Federal Law Count II and Federal Law Count III be, and they hereby are, dismissed;

2. That plaintiff's claim for Monell-type liability against the West Virginia State Police under West Virginia law (see supra, n.7), as contained in State Law Count II, be, and it hereby is, dismissed;

3. That defendant Trooper Snyder be, and he hereby is, dismissed, but his dismissal is without prejudice to the amendment, if good cause be shown, of the amended complaint to rejoin Trooper Snyder in this action;

4. That in all other respects, the motion to dismiss of defendants Trooper Price and West Virginia State Police be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: June 27, 2012

John T. Copenhaver, Jr.
United States District Judge

27