```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                     AT CHARLESTON


STEPHEN S. KREIN,

        Plaintiff,

v.                             Civil Action No. 2:11-cv-0962


WEST VIRGINIA STATE POLICE and
TROOPER L. W. PRICE, individually
and in his official capacity,

        Defendants.
```

## MEMORANDUM OPINION AND ORDER

Pending is defendants' motion to exclude plaintiff's proffered expert witness William Flynn, filed June 21, 2013.

## Background

The court has already addressed in detail the facts that Krein asserts give rise to this case. (Memorandum Opinion and Order 2-9, June 11, 2013.) The facts pertinent to this motion are as follows. On December 1, 2008, West Virginia State Troopers L. W. Price ("Price") and W. S. Snyder ("Snyder") were searching for Stephen S. Krein ("Krein"), who had an outstanding warrant for an earlier incident. (Amended Complaint ¶ 4.) Price and Snyder set up a surveillance point overlooking Route

119 in Roane County, West Virginia.  (Id. ¶ 5.)  At around 9:20 p.m., they located Krein at Huffman's Country Store near the intersection of Route 119 and Ambler Ridge Road, near Walton, West Virginia.  (Id. ¶¶ 4-6; Price Statement/Affidavit 5.)

Krein was sitting in his white Chevrolet truck, backed into the store parking area and facing toward the road, with a burgundy car parked about ten feet to his left.  (Price Stmt./Aff. 5.)  The troopers pulled their cruiser into the parking area about six feet in front of Krein's truck, leaving a gap between the back of the cruiser and the burgundy car.  (Id. at 5-6.)  Krein backed his car up and hit a fuel pump, while the troopers exited the cruiser.  (Snyder Statement 3.)  Snyder moved toward the driver's side of the truck near the burgundy car, and Price started walking around the back of the cruiser toward the passenger side.  (Id. at 3; Price Stmt./Aff. 6.) Krein then drove forward and hit the cruiser, causing the passenger side door to close.  (Am. Compl. ¶ 10.)

Krein again backed up his vehicle and cut his wheel to aim for the gap between the cruiser and the burgundy car.  (Am. Compl. ¶¶ 10-11; Price Stmt./Aff. 6.)  Snyder stood "at a 45 degree angle away from the truck against another vehicle," presumably the burgundy car, with his gun drawn.  (Snyder Stmt. 3.)  With his pistol drawn, Price moved between the cruiser and

2

Krein's truck, and ordered Krein to stop. (Am. Compl. ¶ 13; Price Stmt./Aff. 6-7.) As the truck began moving forward, Price raised his gun and fired a shot, which hit the truck's grill area or went under the truck. (Price Stmt./Aff. 8.; Snyder Stmt. 3.)

At the same time, Krein leaned his head down into the passenger seat area of his vehicle to avoid being struck by the gunfire. (Am. Compl. ¶ 15.) According to Snyder, Krein "leaned over in his seat and grabbed the steering wheel and turned it." (Snyder Stmt. 3.) The truck continued coming forward. (Price Stmt./Aff. 8.) Snyder saw that Krein was going to drive toward the gap, so he moved along the side of the burgundy car to avoid Krein's truck. (Snyder Stmt. 4.)

What happened next is the case's primary factual dispute and the subject of Flynn's proposed testimony. There is no dispute that as Krein's truck continued forward, Price fired a second shot, which pierced the passenger side window of Krein's truck and entered his head. (Snyder Stmt. 7-8; Am. Compl. ¶ 16). The dispute centers on where Price was standing when he fired this shot. The complaint alleges that Price was standing to the side of Krein's truck when he fired the second shot. (Am. Compl. ¶ 16). However, Price claims he felt that he was in danger of being crushed by Krein's oncoming vehicle if he

3

did not take the shot, indicating he was still in front of the truck. (Price Stmt./Aff. 10-11.) Testimony of the other eyewitnesses is inconclusive as to which version of events is correct. After the second shot, Krein's truck rolled between the gap in the vehicles and came to a stop in the road. (Id. at 8.)

On December 6, 2010, Krein initiated this action in the Circuit Court of Kanawha County, West Virginia. On November 28, 2011, Krein filed an amended complaint, including claims made under 42 U.S.C. § 1983. On December 2, 2011, the defendants removed. Following defendants' motion to dismiss and motion for summary judgment, the following claims remain: 1) Federal Law Count I, excessive force in violation of the Fourth Amendment against Trooper Price; 2) State Law Count I, excessive force in violation of Article III, Section 6 of the West Virginia Constitution against Trooper Price;[1] 3) State Law Count II, vicarious liability for violations of the West Virginia Constitution against the State Police; and 4) State Law Count V,

---

[1]The Supreme Court of Appeals of West Virginia has "traditionally construed Article III, Section 6 in harmony with the Fourth Amendment." State v. Duvernoy, 156 W. Va. 578, 582, 195 S.E.2d 631, 634 (1973). As a result, plaintiff's excessive force claim under the West Virginia Constitution is subject to the Fourth Amendment's "objective reasonableness" standard.

common law intentional infliction of emotional distress against Trooper Price.

Krein has retained William Flynn to develop his excessive force claims. Flynn has twenty-three years of law enforcement experience and has taught classes in that area at both the college level and as an hourly instructor at a police academy. (Plaintiff's Response Ex. 1, at 1.) Flynn's curriculum vitae lists twenty-seven cases in which he has provided testimony as an expert. (<u>Id.</u> at 5-8.) The court has not been provided with Flynn's expert report. As such, the court has had to deduce his proposed testimony from the briefing on this motion, excerpts from his deposition, and his curriculum vitae. Based on these materials, it appears Flynn's opinions are as follows:

1. The trajectory of Price's second shot shows that he was standing to the side of Krein's car when he fired the shot.

2. The location of the shell casing from Price's second shot shows that he was standing to the side of Krein's car when he fired the shot.

3. Price had no reason to feel that he was in danger when he fired the second shot, and firing this shot was not what a reasonable police officer would have done.

### Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. The rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Id.

A witness qualified as an expert has wide latitude to testify on matters within the scope of his expertise. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). The primary limitation on the scope of an expert's testimony is helpfulness: testimony that is helpful to the jury may be admissible, while testimony that is not helpful can be excluded. See Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993) ("The boundary between [admissible and inadmissible expert testimony] is defined by helpfulness.").

Defendants challenge Flynn's testimony on the ground that it contradicts "every eyewitness's description of the events." (Defs.' Mot. Exclude 15.) This is somewhat of a mischaracterization of the record, because, as the court noted in denying defendants' motion for summary judgment, the testimony of the eyewitnesses does not provide a clear picture of Price's location at the time of the second shot. Rule 702 allows an expert to testify if it will "help the trier of fact to understand the evidence or to determine a fact in issue." An expert testifying as to a fact in issue may rely on evidence that is contradicted by some other evidence in the record. This alone is not a ground for exclusion.[2]

Defendants primarily assert that Flynn is not qualified to give his proposed testimony and that it would not help the jury. (Mot. 5.) Defendants focus their arguments on

---

[2]Plaintiff's response indicates that, in formulating his opinion, Flynn gave different weight to the testimony of each witness based on his perceptions of their credibility. It is unclear from the information available if Flynn planned to testify to the jury about the credibility of eyewitnesses, but to the extent he did, this would be an improper usurpation of determinations properly within the jury's purview. See United States v. Dorsey, 45 F.3d 809, 815 (4th Cir. 1995); United States v. Lespier, 725 F.3d 437, 449 (4th Cir. 2013) cert. denied, 134 S. Ct. 974, 187 L. Ed. 2d 829 (2014); see also United States v. Harris, 995 F.2d 532, 535 (4th Cir. 1993) (recognizing that determinations of eyewitness credibility are only properly the subject of expert testimony in narrow circumstances, such as cross-racial identification).

Flynn's lack of qualifications, apt methodology, and, with respect to his first two opinions, factual support.

1. The Trajectory Theory

Defendants focus first on Flynn's proposed testimony that Price must have been standing to the side of Krein's truck when he fired the second shot, based on the trajectory of the bullet. (Defendants' Motion to Exclude 5.) Flynn asserts that he can tell that Price was standing beside the truck, rather than in front of it, based on the path of the bullet through Krein's head. (Defs.' Mot. Exclude Ex. 1, Flynn Deposition 64:7-15.) However, when asked, Flynn admitted he does not know where in Krein's head the bullet came to rest. (Id. at 145:16-25.) Flynn believes that the bullet hit the right side of Krein's head and moved toward his forehead. (Id. at 145:5-3.) However, he admits that his understanding of the bullet's path is partially based on his opinion that Price was standing to the side of Krein's truck when he fired the second shot. (Id. at 146:3-9). Additionally, when asked about his qualifications for his trajectory-related opinions, Flynn admitted he is not an expert on bullet trajectory, firearms, or ballistics. (Id. at 63:16-64:6.) Flynn also admitted that he lacks expertise related to any of the medical issues related to the bullet's path through Krein's head. (Id. at 140:25-141:14.)

Due to Flynn's admitted lack of qualifications related to bullet trajectory, it is unlikely that he is qualified to be an expert on this issue.  Further, even if he was assumed to be sufficiently qualified, this opinion lacks the necessary factual support to meet the requirements of Rule 702(b).  Notably, his opinion on Price's position when he fired the second shot is based largely on the bullet's path through Price's head, but his understanding about the bullet's path is partially based on his assumption that Price was standing to the side of Krein's truck.  This is circular reasoning insufficiently grounded in established fact.

In his response, plaintiff attempts to refocus Flynn's proposed testimony, asserting "Mr. Flynn will not be offering testimony about the path the bullet took when it actually entered the plaintiff's head but rather the fact that it came in through the passenger side window and hit the plaintiff on the right side of his head."  (Pl.'s Resp. 4-5.)  However, in his deposition, Flynn stated that his determination about Price's location at the time of the second shot was made without consideration of the window.  (Flynn Dep. 60:17-61:8.)  Additionally, Flynn admitted it would be possible for someone to shoot through the passenger side window of the truck while

standing in the area in front of the vehicle. (Id. at 61:16-63:6.)

Flynn's trajectory-based opinions with regard to Price's location at the time of his second shot are without sufficient factual support. Inasmuch as Flynn planned to testify as to Price's location based on the trajectory of the second shot, the motion to exclude is, on this point, granted.

2. The Shell Casing Theory

Defendants next focus on Flynn's use of the location of the shell casings from Price's gun to determine Price's location at the time of the second shot. (Def.'s Mot. Exclude 12.) Though it is unclear from the truncated deposition on the record how heavily Flynn relies on this method, it is clear that the methodology is insufficient to meet the standards of Rule 702. Flynn admits that, when fired from a single site, the final locations of shell casings could vary ten to fifteen feet. (Flynn Dep. 76:6-25.) Flynn also admits that he has not done any research on the reliability of the use of shell casing locations to determine the position of the shooter, and that he is not an expert on the technique. (Id. at 80:16-81:6.)

In his response, plaintiff contends that Flynn only used the location of the shell casings tangentially in his

overall conclusion as to Price's location, but offers no support for the methodology, other than Flynn's experience in law enforcement. (Pl.'s Resp. 4.) In a similar case where an expert attempted to determine a shooter's location based on the location of shell casings without citing scientific or technical support for the reliability of the procedure, our Court of Appeals found it within the discretion of a district court to exclude such testimony. United States v. Fultz, 591 F. App'x 226, 227-28 (4th Cir. 2015) cert. denied, 135 S. Ct. 2370 (2015); see also Hathaway v. Bazany, 507 F.3d 312, 318 (5th Cir. 2007) (finding that expert testimony opining on a shooter's location based on shell casing locations was properly excluded where the witness had no specific training in the methodology and only relied on years of law enforcement training).

While not binding precedent that this type of expert testimony is inadmissible, the court finds the skepticism toward the method instructive. Given Flynn's admission that the shell casings could vary ten to fifteen feet when shot from a single site, determining the location of a shooter based on this method would be tenuous even it was established that the shooter had fired multiple shots while standing completely still. In this case, Price fired twice, only the second shot is in question,

and there is a factual dispute as to whether he was moving when he fired it.

Plaintiff fails to demonstrate that Flynn is sufficiently qualified to be considered an expert on his shell casings theory, and fails to provide evidence supporting the reliability of this methodology. Inasmuch as Flynn planned to testify as to Price's location based on the location of the shell casings, the motion to exclude is, on this issue, granted.

3. Reasonableness of Trooper Price's Actions

Plaintiff claims that the essence of Flynn's testimony is that "the officer did not have reason to feel his life was in danger and that the actions of Trooper Price were not that which a reasonable officer would have taken." (Plaintiff's Resp. 15). In their motion to exclude, defendants fail to address the admissibility of this opinion, other than their broad assertion that Flynn's opinion would not assist the jury. (Defs.' Mot. Exclude 5.) In their reply, defendants briefly assert that Flynn does not have sufficient factual support for this opinion, but they fail to develop this argument or cite to any relevant authority. (Defs.' Reply 1.)

In light of defendants' failure to sufficiently address Flynn's third opinion, the motion to exclude is, on this issue, denied without prejudice.

## Conclusion and Order

For the foregoing reasons, the defendants' motion to exclude the expert opinion testimony of William Flynn is granted as to the first two opinions and denied without prejudice as to the third.  The court notes that this order is limited to Flynn's opinions as set forth above.  If Flynn's expert report delineated opinions other than those discussed here, this ruling does not foreclose his testimony on those points, and the court will rule on the specific admissibility of any such testimony at trial.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

ENTER: July 27, 2015

John T. Copenhaver, Jr.
United States District Judge